IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                            Case No. 18-10164-01-JWB

JACOB E. SILCOTT,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to suppress. (Doc. 38.) The government has responded (Doc. 42) and the court held an evidentiary hearing on September 6, 2019. For the reasons stated herein, the motion to suppress is DENIED.

**I. Facts**

The court finds the following facts from the evidence presented at the hearing. At around 11:30 p.m. on the evening of December 5, 2018, Wichita Police Officer Justin Rapp had a residence under surveillance as part of an investigation relating to Defendant Jacob Silcott. Rapp was in an undercover vehicle. When Silcott and his sister, Odessa, left the residence and drove away in a black Acura, Rapp followed them in his vehicle. Rapp was part of an investigative team that included Officers Skyler Boatright and Kale Carson. Boatright and Carson were in a marked patrol car in the vicinity to offer Rapp any needed assistance. Sergeant Bartel, the team supervisor, was monitoring the team's radio traffic from a remote location. The team communicated with each other via an encrypted "inter-op command" radio channel that was limited to team members,

and they also communicated with dispatch and other officers generally via the normal police radio channel.

Rapp followed the Acura to the area of Interstate 135 ("I-135") and First Street. I-135 in that area consists of two elevated roadways – one for northbound traffic and one for southbound traffic - supported by concrete columns. The roadways are additionally separated by a creek channeled in between them (such that this stretch of highway is sometimes called "the canal route.") There are ground-level access roads just to the east and west of the elevated roadways that are connected to entrance and exit ramps for I-135. Rapp followed the Acura southbound on the access road located just west of the southbound I-135 roadway. That access road allows drivers to either turn west onto First Street or continue straight to the ramp that merges onto southbound I-135. Rapp pulled alongside the Acura as he approached First Street. Both vehicles were in left-turn lanes, and as Rapp turned left (east) onto First Street, the Acura turned left and pulled in behind him and followed him. Rapp radioed Boatright and Carson that the Acura was following him. Rapp testified the Acura pulled up close behind him – to within approximately one-half car length – as the cars approached thirty miles per hour. Rapp testified he believed the Acura would have hit him if he had been forced to apply his brakes. He believed the Acura driver violated a Kansas statute that prohibits following too closely behind a vehicle. *See* K.S.A. § 8-1523(a).

Boatright and Carson were near Second Street and I-135 when they got Rapp's transmission that the Acura was following him. Boatright was driving. They were headed west on Second Street and turned left (south) onto the access road that Rapp had just taken. Boatright and Carson both testified that as they looked to the southeast, they could see Rapp's vehicle moving with another vehicle traveling closely behind him - "right on his bumper" or "very close behind" him. The court finds Boatright's and Carson's testimony about seeing the Acura driving

close behind Rapp's vehicle was credible. Although evidence at the hearing indicated that the concrete pillars supporting the elevated highway had the potential to obstruct the officers' line of sight at certain angles as they looked in the direction where the alleged violation occurred, the evidence showed substantial gaps between the pillars where their vision would not have been obstructed. Moreover, with all three vehicles in motion, it was highly probable that the changing angles between the patrol car and the other two vehicles would have given Boatright and Carson the opportunity for an unobstructed view of the other two cars at one or more points during their maneuvers around the elevated highways. Boatright and Carson both testified to having seen Defendant's vehicle following Rapp too closely, and their testimony was consistent on this point. In finding their testimony credible, the court notes the officers' ability to see these events would have been significantly better and clearer than suggested by the somewhat blurry images shown in videos and pictures submitted at the hearing. The court has also considered the fact that (as discussed below) the evidence strongly indicates the Acura was in fact following closely behind Rapp's vehicle at the point where Boatright and Carson said they saw it, and the officers were looking for the vehicles at that point, having been informed by Rapp that the Acura was following him.

Boatright accelerated eastbound on First Street to catch up to the vehicles. He told Carson to radio their location (First and Hillside) to dispatch. Carson did so, indicating to the dispatcher that they were making a traffic stop in that vicinity. As they approached the Acura the officers activated their emergency lights. In response, the Acura slowed and turned right (south) on to Chautauqua Street and began to pull over. Government's Exhibit 13, the video and audio recording from Carson's body-worn camera, shows that as the Acura was turning onto Chautauqua, Sgt. Bartel, who was monitoring events remotely, asked if they "can use a follow too close" to stop the

Acura, likely unaware the officers were already stopping the vehicle. Apparently in response to Bartel, Rapp radioed, just as the Acura was coming to a stop, "Yes, follow too close guys, they were right on my bumper." That information was relayed just as the Acura stopped, and before the driver of the Acura let her foot off the brake pedal. Carson can be heard on the video saying, "Okay, use that then."

Boatright approached the driver, Odessa Silcott, and explained that he stopped her for following the other vehicle too closely. Odessa and the passenger, Defendant Jacob Silcott, both immediately explained that they believed the vehicle ahead of them was one that belonged to Defendant that had been stolen from his driveway earlier in the day. They indicated they were trying to get up close to the vehicle to identify it. They both essentially confirmed they had been following closely behind Rapp's vehicle. Boatright asked Odessa for identification and insurance, and when Defendant opened the glove compartment to get the insurance information, Carson saw a handgun in plain view. The officers then removed Defendant and Odessa from the vehicle.

**II. Analysis**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has liberally interpreted "seizures" to encompass routine traffic stops, "even though the purpose of the stop is limited and the resulting detention quite brief." *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979). An initial traffic stop is justified at its inception if "an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009). "Reasonable suspicion requires that an officer provide 'some minimal level of objective justification.'" *United*

4

*States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004) (citing *I.N.S. v. Delgado*, 466 U.S. 210, 217 (1984)). This requires only "a showing considerably less than preponderance of the evidence." *Id*. at 1263 (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

The court concludes Officers Boatright and Carson had reasonable suspicion to stop the driver of the Acura for a violation of K.S.A. 8-1523(a). That provision states in part that a driver "shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles" and the traffic and condition of the roadway. The testimony of Boatright and Carson shows they observed the Acura following closely behind Rapp's vehicle as the two cars moved east on First Street. Based on what they saw, these officers had an objectively reasonable and specific factual basis for suspecting the vehicle was following Rapp more closely than was reasonable under the conditions, even if their limited observation and partially obstructed view may have been insufficient to prove a violation beyond a reasonable doubt. *See United States v. Parada*, 289 F. Supp. 2d 1291, 1300 (D. Kan. 2003) (the reasonable suspicion standard "requires less proof than probable cause and much less proof than beyond a reasonable doubt that a traffic violation occurred.") The court concludes the initial stop of the Acura was thus reasonable within the meaning of the Fourth Amendment. *United States v. Botero-Ospino*, 71 F.3d 783, 787 (10th Cir. 1995) (*en banc*) (stop is reasonable if officer had reasonable suspicion that motorist violated traffic law.)

Defendant's motion to suppress does not raise any additional grounds for suppression. It argues that evidence of the firearm and of any statements made by Defendant were tainted by the allegedly unlawful stop of the vehicle. (Doc. 38 at 5-7.) Because the court concludes the initial stop was lawful, it rejects Defendant's assertion that evidence resulting from the stop is tainted.

**III. Conclusion**

Defendant's motion to suppress evidence (Doc. 38) is DENIED.  IT IS SO ORDERED this 12th day of September, 2019.

                                                                  s/ John W. Broomes
                                                                  JOHN W. BROOMES
                                                                  UNITED STATES DISTRICT JUDGE